United States District Court
Southern District of Texas
**ENTERED**
February 10, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TSQUARE APTS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| AMLI/BPMT TOWNE SQUARE | § | |
| PARTNERSHIP; AMLI RESIDENTIAL | § | |
| PROPERTIES, L.P.; AMLI | § | CIVIL ACTION NO. H-16-0873 |
| RESIDENTIAL PARTNERS LLC; | § | |
| AMLI MANAGEMENT COMPANY; and | § | |
| PENSIOENFONDS METAAL EN | § | |
| TECHNIEK (PMT) f/k/a STICHTING | § | |
| BEDRIJFSPENSIOENFONDS VOOR DE | § | |
| METAAL EN TECHNISCHE | § | |
| BEDRIJFSTAKKEN (BPMT), | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is AMLI Defendants' Amended Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Brief in Support ("AMLI's Amended Motion to Dismiss") (Docket Entry No. 71). For the reasons stated below, the motion will be granted.

### I.  Factual and Procedural Background

Plaintiff TSquare Apts LLC ("TSquare") filed this action to recover alleged damages arising out of its purchase of a

multi-family residential apartment complex.[1]  TSquare alleges that it purchased the mid-rise apartment complex located near downtown Houston, Texas ("the Complex"), from AMLI/BPMT Towne Square Partnership ("AMLI/BPMT") on or around September 25, 2012.[2]  On or around Memorial Day 2015, heavy rainfall resulted in damage to the Complex.[3]  TSquare alleges that during repairs it discovered evidence of previously undisclosed damage and repairs that had been hidden by AMLI/BPMT.[4]

TSquare filed suit on April 1, 2016.[5]  Defendants AMLI/BPMT, AMLI Residential Properties, L.P. ("AMLI L.P."), AMLI Residential Partners, LLC ("AMLI LLC"), and AMLI Management Company (collectively, "the AMLI Defendants") moved to dismiss or, alternatively, for a more definite statement.[6]  At a scheduling conference held on June 24, 2016, the court ordered TSquare to

---

[1]Plaintiff TSquare Apts LLC's First Amended Complaint ("Plaintiff's Amended Complaint"), Docket Entry No. 70, p. 1.

[2]Id. at 4 ¶ 13.

[3]Id. ¶ 14.

[4]Id.

[5]See Plaintiff TSquare Apts LLC's Original Complaint, Docket Entry No. 1.

[6]See Defendants' Motion to Dismiss, and Alternatively, Motion for More Definite Statement, and Brief in Support, Docket Entry No. 11.

amend its complaint to identify members and partners of the defendant entities, along with their residences, so that the court could determine whether it had jurisdiction.[7] On November 1, 2016, after conducting jurisdictional discovery, TSquare filed its amended complaint, asserting claims for breach of contract, tortious interference, fraud, fraudulent inducement, negligent misrepresentation, and conspiracy to commit fraud.[8] The AMLI Defendants then filed AMLI's Amended Motion to Dismiss.[9]

TSquare is a limited liability company ("LLC") with members who are citizens of Colorado.[10] AMLI/BPMT, AMLI L.P., and AMLI LLC (collectively, "the Member Entities") are members of a complex and multilayered structure of partnerships and limited liability companies (See Organizational Chart below.) of which Prime Property Fund, LLC ("Prime, LLC") is a part.[11]

---

[7]Hearing Minutes and Order, Docket Entry No. 21.

[8]Plaintiff's Amended Complaint, Docket Entry No. 70, pp. 8-15.

[9]See AMLI's Amended Motion to Dismiss, Docket Entry No. 71.

[10]Plaintiff's Amended Complaint, Docket Entry No. 70, p. 1 ¶ 1; Appendix A to Plaintiff's Amended Complaint, Docket Entry No. 70-1.

[11]See Supplemental Declaration of Lidia Novak (Under Seal) ("Novak Declaration"), Docket Entry No. 31, pp. 1-3, see also Organizational Chart, AMLI's Amended Motion to Dismiss, Docket Entry No. 71, p. 8.



The AMLI Defendants argue that the citizenship of one or more of the Member Entities is determined by the citizenship of Prime, LLC, which is a citizen of Colorado because of the Colorado citizenship of two of its members.[12]  The AMLI Defendants argue that the parties are therefore not completely diverse and that the court lacks jurisdiction over this action.   TSquare disputes whether Prime, LLC's citizenship ultimately determines whether the court has subject-matter jurisdiction and argues that, in any event, Prime, LLC is not a citizen of Colorado.[13]

## II.  <u>Analysis</u>

### A.   Applicable Law

"Federal courts are courts of limited jurisdiction." <u>Kokkonen v. Guardian Life Insurance Company of America</u>, 114 S. Ct. 1673, 1675 (1994).  A party may assert the defense of lack of subject matter jurisdiction in a Rule 12(b)(1) motion.   "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'"  <u>Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi</u>, 143 F.3d 1006, 1010 (5th Cir. 1998).   The burden of establishing federal jurisdiction rests with the party

_____

[12]AMLI's Amended Motion to Dismiss, Docket Entry No. 71, pp. 7-9 ¶¶ 8-9.

[13]Plaintiff's Response to AMLI Defendants' Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Plaintiff's Response"), Docket Entry No. 83, pp. 4-5.

asserting its existence.  <u>DaimlerChrysler Corp. v. Cuno</u>, 126 S. Ct. 1854, 1861 n.3 (2006).

"Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  <u>Clark v. Tarrant County, Texas</u>, 798 F.2d 736, 741 (5th Cir. 1986).  Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms:  "facial" attacks and "factual" attacks.  <u>See</u> <u>Paterson v. Weinberger</u>, 644 F.2d 521, 523 (5th Cir. 1981).  A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings.  <u>Id.</u>  A factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings -- such as testimony and affidavits -- may be considered.  <u>Id.</u>  Because the parties have each submitted evidence outside the pleadings, the AMLI Defendants' motion is a factual attack; and the court will consider the evidence in the record, resolving any disputed facts.

Courts have original jurisdiction over civil actions where the parties are diverse and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).[14]   The Supreme Court has held that § 1332 requires

---

[14]Neither party disputes that the amount-in-controversy requirement is met in this case.

-6-

"complete diversity" since 1806.  <u>See</u> <u>McLaughlin v. Mississippi</u> <u>Power Co.</u>, 376 F.3d 344, 353 (5th Cir. 2004) (<u>citing Strawbridge v.</u> <u>Curtiss</u>, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806)).  "Complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." <u>Harvey v. Grey Wolf Drilling Co.</u>, 542 F.3d 1077, 1079 (5th Cir. 2008) (internal quotation marks and citations omitted).

For artificial entities other than corporations, diversity jurisdiction in a suit by or against an entity depends on the citizenship of all its members.  <u>Americold Realty Trust v. Conagra</u> <u>Foods, Inc.</u>, 136 S. Ct. 1012, 1015 (2016) (citations omitted). Where artificial entities are members of other artificial entities, repeated application of the rule may be necessary as citizenship is traced through organizational layers.  <u>See</u> <u>Alphonse v. Arch Bay</u> <u>Holdings, L.L.C.</u>, 618 F. App'x 765, 768 (5th Cir. 2015) (citing <u>Mullins v. TestAmerica, Inc.</u>, 564 F.3d 386, 397 (5th Cir. 2009)). The Fifth Circuit has joined the majority of circuits in holding that these rules apply to limited liability companies as well as partnerships.  <u>Grey Wolf</u>, 542 F.3d at 1080.

**B.   Application**

The essential question in this action is whether Prime, LLC, and as a result, the Member Entities, are citizens of Colorado because of the citizenship of two of Prime, LLC's shareholders: (i) the City of Aurora General Employees' Retirement Plan ("the Aurora Plan"), a Colorado public pension fund; and (ii) the Fire

-7-

and Police Pension Association of Colorado ("the Pension Association"), a political subdivision of Colorado (collectively, "the Colorado Entities").[15]  Although the parties dispute whether the citizenship of the Colorado Entities[16] has any bearing on diversity, it is undisputed that both entities have the same relationship, whatever it may be, to Prime, LLC.[17]  The court therefore combines its analysis of the Colorado Entities except where otherwise stated.

In attachments to its Amended Complaint TSquare sets forth its citizenship as well as what it alleges to be the citizenship of the AMLI Defendants.[18]  But TSquare states that it "lacks sufficient knowledge and information to form a belief about the citizenship" of Prime, LLC.[19]  Nevertheless, TSquare alleges that it believes that Prime, LLC is a single member LLC.[20]

---

[15]AMLI's Amended Motion to Dismiss, Docket Entry No. 71, p. 9.

[16]The parties do not, however, appear to dispute that the Colorado Entities are Colorado citizens.

[17]See Plaintiff's Response, Docket Entry No. 83, p. 7 ("AMLI Defendants claim the Pension Fund and the Pension Association are both 'member-owners' and hold the same interest in Prime Property Fund, LLC [Doc. 71 ¶ 20].  Accordingly, the Pension Association's sworn declaration stating it is *not* a member of Prime Property Fund, LLC likewise demonstrates the Pension Fund is *not* a member of Prime Property Fund, LLC.").

[18]See Appendix B to Plaintiff's Amended Complaint, Docket Entry No. 70-2, p. 2 ¶¶ 10-11.

[19]Id. ¶ 10.

[20]Id. ¶¶ 10-11.

-8-

In support of their argument that Prime, LLC has Colorado members the AMLI Defendants first cite to the Amended and Restated Limited Liability Company Agreement of Prime, LLC ("Fund Operating Agreement"), which states in Article 3, Section 3.03(a) that "[e]ach Initial Subscribing Shareholder of Voting Shares . . . agree[s] to pay consideration to the Company . . . in exchange for . . . Voting Shares of the Company."[21] Second, the AMLI Defendants cite to subscription agreements signed by the Colorado Entities, which state, in relevant part, that each entity subscribed for shares in Prime, LLC.[22] Third, the AMLI Defendants note that TSquare previously filed as exhibits statements purporting to show the Colorado Entities' ownership percentages in "Prime Property Fund."[23] Fourth, the AMLI Defendants attach redacted copies of IRS Form 1099-DIV for each of the Colorado Entities showing that each receives quarterly dividend statements from Prime, LLC.[24] Finally, the AMLI Defendants submit signed, written consent forms showing that each of the Colorado Entities, as "a holder of Voting Shares of [Prime, LLC,] a Delaware limited liability company" consented to

---

[21]AMLI's Amended Motion to Dismiss, Docket Entry No. 71, p. 14 ¶ 21 (citing Fund Operating Agreement, Docket Entry No. 72-1, Art. 3, Section 3.03(a), p. 17).

[22]Id. ¶¶ 22-23 (citing Docket Entry Nos. 31-1, p. 35 and 31-3, pp. 29-30).

[23]Id. ¶ 25 (citing Docket Entry Nos. 56-3, p. 2 and 56-4, p. 4).

[24]Id. (citing Pension Fund's 2015 1099-DIV and Political Subdivision's 2015 1099-DIV, Exhibits C & D to AMLI's Amended Motion to Dismiss, Docket Entry Nos. 72-3 and 72-4, respectively).

the election of each of the Independent Directors nominated by the board.[25]

The AMLI Defendants' evidence proves that, at a minimum, the Colorado Entities are shareholders of Prime, LLC.   In order to further determine whether they are members of Prime, LLC, the court first looks to the Fund Operating Agreement.   The court has carefully read the Fund Operating Agreement and its attached schedules and amendments.[26]   Although it contains no explicit definition of "member" and few direct references to members as a class, the Fund Operating Agreement supports the AMLI Defendants' position that the Colorado Entities, as shareholders, are members. First, the preamble to the Fund Operating Agreement states that "the Electing Contractholders (as defined below) and Initial Subscribing Shareholders (as defined below) are being issued Shares (as defined below) in and are being admitted as members of [Prime, LLC]."[27]   "Share" is defined as "an interest held by a member of [Prime, LLC] representing a fractional portion of the interests of all members of [Prime, LLC]."[28]   A "Shareholder" is defined as "at any time, any Person who holds Shares and is at such time admitted to the Company as a member in accordance with the

_____

[25]Id. ¶ 26 (citing Pension Fund's Shareholder Consent and Political Subdivision's Consent Exhibits G & H to AMLI's Amended Motion to Dismiss, Docket Entry Nos. 72-7 and 72-8, respectively).

[26]Docketed as Docket Entry Nos. 72-1 and 84-3.

[27]Id. at 7 (emphasis added).

[28]Id. at 12 (emphases added).

terms of th[e] Agreement and is shown as such on the books and records of [Prime, LLC]."[29]   "Non-Voting Share" and "Non-Voting Shareholder" are defined in reference to the foregoing terms.[30] Moreover, Article 11 of the Fund Operating Agreement dealing with transferability of shares includes Section 11.10 entitled "Admission of Members," which describes the method by which "a Person may be admitted to [Prime, LLC] as a Shareholder."[31]

TSquare responds that the citizenship of Prime, LLC does not determine the citizenship of the AMLI Defendants and that neither of the Colorado Entities is a member of Prime, LLC. First, TSquare asserts that the dispute over the AMLI Defendants' citizenship is based on information provided in the declaration of Lidia Novak and argues that the declaration is inadmissible because Novak's statements are not based on her personal knowledge. TSquare alleges that "Novak testified she has no personal knowledge of the organizational structure of the AMLI Defendants" and "that her declaration relied completely on documents prepared by [Gail Freeman][32] and a conversation with [defense] counsel."[33]  TSquare cites the following deposition testimony:

---

[29]Id. (emphasis added).

[30]Id. at 11.

[31]Id. at 59-60.

[32]Deposition of Lidia Novak ("Novak Deposition"), corporate secretary for Prime, LLC and for the fund investment advisor, Morgan Stanley Real Estate Adviser ("MSREA"), Exhibit A to Plaintiff's Response, Docket Entry No. 84-1, 33:21-34:8.

[33]Plaintiff's Response, Docket Entry No. 83, p. 5.

Q: How often do you work with Gail?

A: I would say in the course of a year, probably four or five times we have an occasion to communicate by e-mail.

Q: Do you have any understanding of what her job duties are?

A: Not specifically.

Q: Do you work in combination with her any other time where you are relying on her work?

A: Yes, over the course of a year, as I said, probably four or five times, yes.

Q: In that particular context, what is that related to?

A: It might be -- I might e-mail her and send her an organizational chart, which she maintains and I will ask her, is that the most current version of the document? And then she will tell me yes or she will provide something additional.

Q: Do you know who drafted that document for Gail?

A: I don't -- I'm assuming she did, but I don't really know.

Q: So looking back at number 4, what you relied on for the knowledge that the principal office was located in Georgia and the sole member of PPF OPGP, LLC a Delaware limited liability company was based on an organizational chart; is that correct?

A: Based on an organizational chart, that certificate and my conversation with Braden and the knowledge that whatever information was contained in that certificate was supported by documents that the fund maintains.

Novak Deposition, Exhibit A to Plaintiff's Response, Docket Entry

No. 84-1, 34:14-35:25.  Before the above exchange, however, Novak

gave the following testimony:

Q: Your primary role is, is that fair to say, basically in the management, the investment or vice [sic] for the particular fund, Prime Property Fund?

-12-

A: It is all really related to Prime Property Fund, right.

Q: How long have you been in this position?

A: I have been with Morgan Stanley since November of 2003, so doing work since then.

Q: When did Prime Property Fund begin; when was it initiated?

A: It became an LLC on June 30th, 2004.

Q: And you have been assigned to Prime Property Fund since the beginning?

A: Yes.

. . . .

Q: Fabulous. [Declaration paragraph] Number 4 says, "The Fund, with its principal office located in Georgia, is the sold [sic] member of PPF OPGP, LLC, a Delaware limited liability company ("OPGP")."

Where did you get that information?

A: I relied on my knowledge of AMLI in general, organizational charts that I have seen throughout the course of my daily work and I also relied on the secretary certificate that contains this information and I consulted with our in-house counsel Braden Wilhelm.

Id. at 7:4-21; 32:19-33:8.

Contrary to TSquare's assertion, Novak's deposition testimony shows that she relied on her personal knowledge along with organizational charts maintained by Freeman in her capacity as corporate secretary. Nothing in Novak's Deposition, which the court has read in its entirety, suggests that Novak lacked personal knowledge of the facts in her declaration, despite the fact that she may have consulted corporate documents or counsel before

signing the declaration under penalty of perjury.[34]  Moreover, the court need not rely solely on Novak's Declaration because TSquare attached a similar description of the AMLI Defendants' corporate structure to its Amended Complaint without qualification.[35]

TSquare further asserts that "[Prime, LLC] is not a party to this case or even a member or partner in any AMLI Defendant."[36] That fact is irrelevant.  The court must apply its citizenship analysis through as many organizational layers as necessary to accurately determine the citizenship of the defendants.  The evidence before the court proves that Prime, LLC is the limited partner of PPF OP, LP, which is the sole member of PPF Multifamily, LLC, which is in turn the sole member of PPF AMLI Acquisition LLC, the sole member of defendant AMLI LLC and a limited partner of defendant AMLI L.P.

TSquare next argues that the Pension Association is not a member of Prime, LLC.  First, TSquare cites to the sworn declaration of J. Scott Simon, Chief Investment Officer of the Pension Association.  Simon declares:

> The Association does not hold or possess stock certificates or membership instruments in [Prime, LLC].

---

[34]Considering the complexity of the alleged organizational structure, Novak's need to refresh her recollection regarding its details from a source she personally knows to be reliable is understandable.

[35]See supra notes 10-11 and accompanying text.

[36]Plaintiff's Response, Docket Entry No. 83, p. 4.

-14-

> The Association is not a shareholding member or managing
> member of [Prime, LLC]. The Association does not
> participate in the management of [Prime, LLC]. The
> Association does not receive and has never received an
> annual K-1 tax form specific to the Association from or
> in connection with [Prime, LLC].

Declaration from Fire and Police Pension Association of Colorado ("Simon Declaration"), Exhibit B to Plaintiff's Response, Docket Entry No. 84-2, p. 1. TSquare argues that Simon's Declaration and the fact that (i) no investor has a direct ownership in the fund's assets and (ii) "the Manager of Prime Property Fund, LLC has exclusive power and authority over the investments of the company" indicate that Prime, LLC's shareholders are "merely" investors in "an investment fund held by Prime Property Fund, LLC."[38]

At best, the Simon Declaration sets up dueling investor testimony. Simon declares that the Pension Association is "not a shareholding member" of Prime, LLC.[39] But Tom Connell, administrator of the Aurora Plan, refused to sign an identically worded declaration[40] and testified to the contrary at his deposition.[41] Connell testified that he understood that the Aurora Plan owns shares in an actual limited liability company as opposed

---

[38]*Id.* at 5-6.

[39]Simon Declaration, Exhibit B to Plaintiff's Response, Docket Entry No. 84-2.

[40]AMLI's Amended Motion to Dismiss, Docket Entry No. 71, p. 17 ¶ 28 (citing Deposition of Tom Connell ("Connell Deposition"), Exhibit B to AMLI's Amended Motion to Dismiss, Docket Entry No. 72-2, 73:6-74:11).

[41]Connell Deposition, Exhibit B to AMLI's Amended Motion to Dismiss, Docket Entry No. 72-2, 55:4-56-5.

to a mere investment vehicle.[42]   The conflicting declaration and deposition[43] prove little, however, because neither investor purported to have sufficient expertise -- legal or otherwise -- to resolve the parties' dispute over the membership status of the Colorado Entities.

TSquare's arguments regarding the management and ownership of Prime, LLC's assets are not persuasive.   The signed consent form from each of the Colorado Entities consenting to the election of the Independent Directors undermines TSquare's assertions that shareholders have no role in the management of Prime, LLC.   But assuming _arguendo_ that TSquare is correct, because LLCs are creatures of state law,[44] and because Prime, LLC was formed under Delaware law, the court looks to the law of that state to determine whether members of LLCs are required to directly own assets or participate in management.   The court has reviewed the Delaware Limited Liability Company Act, Del. Code tit. 6, §§ 18-101 et seq., and can find no support for the argument that members must directly

---

[42]_Id._

[43]The court notes, however, that only Connell's statements were subject to cross-examination.

[44]J. William Callison and Maureen A. Sullivan, Limited Liability Companies: A State-by-State Guide to Law & Practice § 1:1 Nature of limited liability company (2016) (Westlaw) ("LLCs are formed pursuant to various state limited liability company acts, which generally set forth a series of default rules that govern LLC operation and governance unless the members' operating agreement specifies particular rules.").

-16-

own an LLC's assets or exercise control over the company. To the contrary, Delaware law provides for multiple classes of members with varying rights.[45]

Finally, TSquare argues that "Prime Property Fund, LLC" refers to both an actual LLC and an "investment vehicle" of the same name created by the LLC.[46] TSquare offers three arguments for why the Pension Fund holds shares in this alleged investment fund rather than the LLC itself. First, TSquare alleges that the Pension Fund "generally does *not* own shares in the companies that hold[] and manage[] the investment funds."[47] Second, TSquare asserts without explanation that Prime, LLC's election to be treated as a real estate investment trust ("REIT") for federal tax purposes indicates that the Pension Fund is "merely an investor in a fund managed and held by [Prime, LLC] and not a member of [Prime, LLC]."[48] Finally, TSquare argues that the Pension Fund does not appear to be a member or owner of Prime, LLC because it does not have share certificates.

TSquare's arguments are not convincing. First, the typical structure of the Pension Fund's other investments has no bearing on how Prime, LLC is structured. Second, TSquare has offered no reasoning, and the court can think of none, to support the

---

[45]<u>Id.</u> at § 18-302(a).

[46]Plaintiff's Response, Docket Entry No. 83, p. 6.

[47]<u>Id.</u> at 7.

[48]<u>Id.</u>

-17-

assertion that Prime, LLC's REIT election for federal tax purposes is evidence of the existence of a distinct investment vehicle. Third, as evidenced by the Fund Operating Agreement[49] and affirmed by deposition testimony,[50] Prime, LLC is uncertificated, and thus no shareholder possesses share certificates. Finally, because neither the Fund Operating Agreement nor its attachments make any mention of a distinct investment vehicle like the one hypothesized by TSquare, the court can find no evidence to support TSquare's allegations.

The court finds that the Colorado Entities were shareholders of Prime, LLC, an LLC organized under Delaware law when this suit was filed. The court further finds that the Colorado Entities, as shareholders, are also members of Prime, LLC. The court therefore concludes that Prime, LLC and, as a result, the Member Entities, are citizens of Colorado. Because TSquare is also a citizen of Colorado, the parties are not completely diverse, and the court must dismiss this action for want of subject-matter jurisdiction.[51]

---

[49]Fund Operating Agreement, Docket Entry No. 84-3, p. 16 § 3.02 ("All Shares issued hereunder shall be uncertificated unless otherwise determined by the Manager in its discretion.").

[50]Novak Deposition, Exhibit A to Plaintiff's Response, Docket Entry No. 84-1, 17:4-7.

[51]At least one of the Member Entities is a necessary party. Dismissal of the non-diverse parties pursuant to Federal Rule of Civil Procedure 21 would therefore not be appropriate.

### III.  Conclusions and Order

For the reasons explained above, the court concludes that TSquare has failed to meet its burden to establish that the AMLI Defendants are completely diverse. Accordingly, the AMLI Defendants' Amended Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Docket Entry No. 71) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 10th day of February, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE